*Law Library*

**IN THE SUPERIOR COURT OF GUAM**

| | | |
|---|---|---|
| SALVADOR ENRIQUEZ, | ) | **CIVIL CASE NO. CV1486-11** |
| Plaintiff, | ) | |
| vs. | ) | **DECISION AND ORDER** |
| ELSIE SMITH, | ) | |
| Defendant. | ) | |

## INTRODUCTION

This matter came before the Honorable James L. Canto II pursuant to a Decision and Order issued by this Court on May, 10, 2013. An evidentiary hearing was held on June 24, 2013. Attorney Douglas B. Moylan represented Plaintiff; Attorney Robert L. Keogh appeared on behalf of Defendant. Having considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant Elsie Smith was a patient of Dr. Hugh Sule, a dentist at Gentlecare Dental Clinic in Tamuning. Defendant alleges that Dr. Sule initiated a root canal on her, but in the middle of the procedure, he left her in the hands of a dental auxiliary who continued performing the root canal. After the root canal, Defendant suffered pain and swelling of her face and eye. Defendant eventually lodged a complaint with the Guam Board of Examiners for Dentistry (hereinafter "Dental Board"). During the investigation of her complaint, Defendant was asked to view photographs to identify the dental auxiliary who assisted with the root canal. Through these photographs, Defendant identified Plaintiff Salvador Enriquez. As a result, the Dental Board, represented by the Office of the Attorney General (hereinafter "Attorney General"), filed a disciplinary case against Dr. Sule and Plaintiff.

On September 1, 2011, Plaintiff filed this civil action to allege that Defendant's complaint to the Dental Board wrongfully identified him as the dental auxiliary who assisted

with the root canal. (Complaint, 2, Sept. 1, 2011.) Plaintiff claimed damages for defamation, invasion of privacy and emotional distress as a result of Defendant's complaint and subsequent disciplinary proceedings before the Dental Board. *Id.* at 3-13.

On September 21, 2011, Defendant moved to dismiss the complaint or alternatively to obtain summary judgment pursuant to the Citizen Participation in Government Act (hereinafter "CPGA"). On January 6, 2012, the Court granted Defendant's motion to dismiss and declined to address alternative relief under the CPGA. On appeal, the Supreme Court of Guam ruled that,

> In instances where a trial court is presented with any motion to dispose of a claim, even if pled alternatively, that raises the immunity from liability described in the CPGA, the trial court should first determine whether the claim actually falls within the scope of the CPGA. If the claim does, then the trial court must treat the motion to dispose of the claim as one for summary judgment and follow the procedures required by 7 GCA § 17106.

*Enriquez v. Smith*, 2012 Guam 15 ¶ 20. On this basis, the matter was remanded "for the trial court to determine in the first instance whether Smith's actions complained of in Enriquez's lawsuit are entitled to CPGA protections and whether Smith is thus entitled to the substantive relief mandated by the CPGA." *Id.* at ¶ 21.

On May 10, 2013 the Court dismissed the Plaintiff's claims and held that Defendant was entitled to substantive relief mandated by the CPGA. On June 24, 2013, the Court held an evidentiary hearing to determine the amount, if any, of Defendant's award of attorney's fees, costs, and sanctions. Plaintiff argues for the denial of sanctions, attorney's fees and costs, or that they be substantially reduced because of Defendant's unclean hands and the unreasonable rates and calculation of Defendant's attorney's fees. Defendant contends that the rate and method of calculation of Defendant's attorney's fees are reasonable, and sanctions to deter repetition of such conduct by Plaintiff or others similarly situated are necessary. Further, Defendant requests an award of compensatory damages pursuant to 7 GCA §17106(h).

///

## DISCUSSION

Under Guam law, a motion to dispose of a claim on the grounds of immunity under the CPGA is governed by Title 7 GCA § 17106. Because the awarding of attorney's fees, costs, and sanctions under the CPGA are matters of first impression for the Court, the Court must first examine the statutory language of the CPGA. *See Sumitomo Constr. Co., Ltd. v. Gov't of Guam*, 2001 Guam 23 ¶ 17 ("It is a cardinal rule of statutory construction that courts must look first to the language of the statute itself. Absent clear legislative intent to the contrary, the plain meaning prevails.").

On a plain reading of the CPGA, section 17106 (g)(1) expressly states that the court shall "award a moving party who is dismissed...costs of litigation, including reasonable attorney and expert witness fees, incurred in connection with the motion." 7 GCA § 17106(g)(1). Section 17106(g)(2) further states that a court may impose "such additional sanctions upon the responding party, its attorneys or law firms as it determines will be sufficient to deter repetition of such conduct and comparable conduct by others similarly situated." 7 GCA § 17106(g)(2). In addition to attorney's fees and sanctions, section 17106(h) allows a person who has been damaged or injured as a result of a violation of their immunity from liability in furtherance of the Constitutional right to petition under section 17104 to "seek relief in the form of a claim of actual or compensatory damages, as well as punitive damages, attorney's fees and costs, from the person or persons responsible." 7 GCA § 17106(h).

As recognized by the Supreme Court of Guam, the state of the law in our jurisdiction relative to the CPGA has not been extensively developed. *Enriquez v. Smith*, 2012 Guam 15 ¶ 14. The issues presented before the Court are matters of first impression, and the relevant Guam statute and precedent do not provide a clear answer as to the amount of attorney's fees, costs, and sanctions awarded to a Defendant prevailing on a motion for summary judgment under the CPGA. Taking into account the similarity between Guam's CPGA and California's anti-SLAPP (strategic lawsuit against public participation) statute, as well as the lack of precedential authority in the jurisdiction, the Court is persuaded that the holdings of the

California courts with respect to their citizen practice statute provide guidance in this case.[1] *See People v. Quenga*, 1997 Guam 6 ¶ 8.

### 1. Trial Court's Discretion

The determination of an award of attorney's fees of a prevailing party on an anti-SLAPP motion lies within the broad discretion of a trial court. *See Lin v. City of Pleasanton*, 96 Cal.Rptr.3d 730 (Ct.App.2009); *Christian Research Institute v. Alnor*, 81 Cal.Rptr.3d 866 (Ct.App.2008); *Russell v. Foglio*, 73 Cal.Rptr.3d 87 (Ct.App.2008).

Following a successful special motion to strike under the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, the trial court must award moving parties "reasonable attorney fees ... that adequately compensate them for the expense of responding to a baseless lawsuit." *Jackson v. Yarbray*, 101 Cal.Rptr.3d 303, 317 (Ct.App.2009). Although the award of attorney fees is mandatory under the anti-SLAPP statute, the amount of the fee is discretionary. *Kearney v. Foley and Lardner*, 553 F.Supp.2d 1178, 1184 (S.D.Cal.2008). Therefore, the Court has the discretion to award the Defendant attorney's fees and costs as the Court deems reasonable and appropriate.

### 2. Burden of Proof

As the moving party, a defendant seeking fees and costs bears "the burden of establishing entitlement to an award and of documenting the appropriate hours expended and hourly rates." *Christian Research Institute*, 81 Cal.Rptr.3d 866 at 870 (*quoting ComputerXpress, Inc. v. Jackson*, 113 Cal.Rptr.2d 625, 649 (Ct.App.2001)). A trial court must have "substantial evidence" to support an award of attorney fees under California's anti-SLAPP statute. *Kearney v. Foley and Lardner*, 553 F.Supp.2d 1178, 1185 (S.D.Cal.2008) (*citing Macias v. Hartwell*, 64 Cal.Rptr.2d 222, 226 (Ct.App.1997); *Church of Scientology of California v. Wollersheim*, 49 Cal.Rptr.2d 620, 638-39 (Ct.App.1996)); *see also ComputerXpress*, 113 Cal.Rptr.2d at 649 ("the court may require defendants to produce records

---

[1] The Supreme Court of Guam considered the holdings of California and Illinois courts regarding their citizen participation statutes, stating they are similar to Guam's CPGA. *See Enriquez*, 2012 Guam 15 ¶¶ 14-16. California's case law history on this issue is far broader than that of Illinois, which is more nascent and does not extend much beyond *Sandholm v. Kuecker*, 962 N.E.2d 418 (Ill.2012), which is not instructive here.

sufficient to provide a proper basis for determining how much time was spent on particular claims.").

In this case, Defendant's attorney produced the retainer agreement and documentation of the time he spent representing defendant Smith, as well as the costs and expenses incurred on this matter. The Court finds the Defendant produced records sufficient to support an award of attorney's fees.

### 3. Calculation of a Reasonable Award

The court is not constrained by the amount sought by the successful moving party, but is obligated to award reasonable attorney fees that adequately compensate the party for the expense of responding to a baseless lawsuit. *Jackson v. Yarbray*, 101 Cal.Rptr.3d 303, 317 (Ct.App.2009). The anti-SLAPP statute "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating herself from a baseless lawsuit." *Wilkerson v. Sullivan*, 121 Cal.Rptr.2d 275, 277 Ct.App.2002) (emphasis added). As stated earlier, the trial court must award successful moving parties "reasonable attorney fees ... that adequately compensate them for the expense of responding to a baseless lawsuit." *Jackson*, 101 Cal.Rptr.3d at 317. (emphasis added). "'Padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Ass'n*, 77 Cal.Rptr.3d 695, 700 (Ct.App.2008).

In the case at bar, Plaintiff filed his defamation complaint on September 1, 2011. On September 21, 2011 at 4:11 p.m., the last day for an answer or responsive pleading to be filed, Defendant filed her *Motion to Dismiss or in the Alternative, Motion for Summary Judgment and Motion for Sanctions and Punitive and Compensatory Damages*. At 8:30 a.m. September 22, 2011, Plaintiff filed a *Notice of Dismissal*, attempting to voluntarily his lawsuit pursuant to GRCP Rule 41(a)(1); however, the dismissal was untimely and thus invalid since Defendant had already filed a responsive pleading the previous day. As stated above, the intent of the CPGA is to award attorney's fees incurred for responding to, or extricating oneself from, a baseless lawsuit. The Court finds that litigation to defend against the lawsuit was unnecessary after the

Plaintiff sought to dismiss it. In fact, Defendant strove to keep Plaintiff's lawsuit alive by filing a formal, written objection to Plaintiff's attempt to dismiss the case. This belies the spirit of the CPGA insofar as seeking attorney's fees for acts which are not designed to free oneself from the oppressive yoke of a baseless lawsuit, but which instead fight to maintain and exacerbate it. Neither would a dismissal of the complaint prevent Defendant from seeking relief for damages, attorney's fees and costs incurred up until that point, because 7 GCA ¶ 17106(h) provides that an aggrieved party may file a separate action for just that purpose. Therefore, the Court deems that the work billed after September 21, 2011 and before December 11, 2012 is not of the sort contemplated by the CPGA as appropriate for remuneration, and the Court will not award attorney's fees or costs for work incurred during that period. However, the Court will address the pertinent portion of Defendant's CPGA motion filed September 21, 2011 and treat it as a separate complaint filed pursuant to 7 GCA § 17106(h) to recover compensatory damages, punitive damages, attorney's fees and costs for Plaintiff's violation of the CPGA. Accordingly, the court accepts as relevant all work performed on and after December 11, 2012, as this work was performed purely to advance Defendant's CPGA claim.

The Court will calculate the amount of attorney fees award under the anti-SLAPP statute in accordance with the "lodestar" method. *Ketchum v. Moses*, 104 Cal.Rptr.2d 377, 386-87 (Cal.2001). Under the "lodestar" method, a court calculates "the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work." *Cabral v. Martins*, 99 Cal.Rptr.3d 394, 411 (Ct.App.2009); *see also Christian Research Institute*, 81 Cal.Rptr.3d at 870 (when computing an attorney award to a defendant prevailing on a special motion to strike under the anti-SLAPP statute, a trial court "begins with a touchstone or lodestar figure, based on careful compilation of the time spent and reasonable hourly compensation of each attorney involved in the presentation of the case."). The calculation of the lodestar may be adjusted by the court based on the following factors: (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. *Ketchum*, 104

Cal.Rptr.2d at 384. *See Russell*, 73 Cal.Rptr. at 93 (in determining a reasonable award of attorney's fees for the prevailing party, courts have considered the following factors: the nature of the litigation, the complexity of the issues, the experience and expertise of counsel, and the amount of time involved.); *Wilkerson v. Sullivan*, 121 Cal.Rptr.2d 275, 279 (Ct.App.2002) (courts consider whether the amount requested is based upon unnecessary or duplicative work).

The lodestar adjustment approach also "allows a court awarding attorney fees to include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment, in an amount approaching the market rate for comparable legal services." *Ketchum*, 104 Cal.Rptr.2d at 387. The California Supreme Court reasoned as follows:

> Under our precedents, the unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider under Serrano III. The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees.

*Ketchum*, 104 Cal.Rptr.2d at 389.

In this case, Defendant's attorney, Mr. Keogh, produced documentation of the time he spent representing Defendant and the costs and expenses incurred on this matter. With the foregoing in mind, the Court will consider the attorney's fees and costs in two groups: 1) attorney's fees and costs before May 10, 2013, the date the Plaintiff's complaint was dismissed pursuant to the CPGA by this Court; and 2) attorney's fees and costs after May 10, 2013.

a. Attorney's Fees and Costs Before May 10, 2013

After reviewing the declarations herein, the Court finds, for purposes of the application of 7 GCA §§ 17101 et. seq. to these facts, that Mr. Keogh's contingent attorney fee rate of $350 per hour was a reasonable rate in the community. In this case, declarations were submitted to show that lawyers with Mr. Keogh's experience charge around $250 per hour or more in non-contingency fee cases. Taking into account the fact that this was a contingency fee-based

arrangement on a novel issue in Guam where Mr. Keogh took on the risk of nonpayment if Defendant was unsuccessful at recovering any amount, the $350 per hour rate was reasonable rate until May 10, 2013 when this Court dismissed the Plaintiff's claims and held that Defendant was entitled to substantive relief mandated by the CPGA. Further, the Court does not find that the time amounts set forth in Mr. Keogh's billings were outside the scope of 7 GCA § 17106. Therefore, Plaintiff is entitled to attorney's fee for 47.10 hours at the rate of $350 per hour, which equals $16,485.00 for services plus $716.32 for incurred costs, totaling $17,201.32. This reflects the reasonable work performed and costs incurred up to September 21, 2011, and from December 11, 2012 to May 10, 2013.

b. Attorney's Fees and Costs After May 10, 2013

Under the California anti-SLAPP statute, "an award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees." *Ketchum*, 104 Cal.Rptr.2d 377 at 390. A majority of California courts have held that "absent circumstances rendering the award unjust, fees recoverable ... ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim." *Id*. at 391 (alteration in original) (citation omitted).

In this case, the Court dismissed the Plaintiff's claims and held that Defendant was entitled to substantive relief mandated by the CPGA on May 10, 2013. Once Plaintiff's claims were dismissed under the CPGA, attorney fees were mandatory under the CPGA and an award of fees was no longer contingent. *See Ketchum*, 104 Cal.Rptr.2d 377 at 391 (once the motion to strike under the anti-SLAPP statute was successful, attorney's fees were mandatory under Code of Civil Procedure section 425.16(c) and, accordingly, no longer contingent). For this reason, the contingency fee rate of $350 per hour shall not be used to calculate the fees after May 10, 2013. Instead, the $250 per hour rate that Mr. Keogh employs for non-contingency related matters shall be applied. Thus Plaintiff is entitled to attorney's fee for 18.65 hours, the number of hours of professional services rendered by Mr. Keogh after May 10, 2013, at the rate of $250 per hour, which equals $4,662.50 for services plus $228.00 for incurred costs, totaling $4,890.50. This reflects the period after May 10, 2013.

c. Total Award of Attorney's Fees and Costs

Adding the attorney's fees and costs for the two periods, the total award of the attorney's fees and costs to Plaintiff is $22,091.82.

**4. Sanctions**

Neither the California anti-SLAPP statute nor the Illinois Citizen Participation Act employs the term "sanctions." *See* CAL.CIV PRO.CODE 425.16 (West 2011); 735 ILL.COMP.STAT.ANN. 110/25 (West 2007). This absence of additional sanctions implies the California and Illinois legislatures intended the award of attorney's fees and costs to be a sufficient punitive and deterrent measure. However, Guam's anti-SLAPP statute differs from those of California and Illinois in this respect. In Guam's CPGA, "the court shall award a moving party who is dismissed, without regards to any limit under Guam law: ... (2) such additional sanctions upon the responding party, its attorneys or law firms as it determines will be sufficient to deter repetition of such conduct and comparable conduct by others similarly situated." 7 GCA § 17106(g)(2).

The facts of this case fall precisely within the ambit of the CPGA. In the instant case Plaintiff, a dental auxiliary, filed a defamation action against Defendant because Defendant made a complaint against him to the Guam Board of Examiners for Dentistry, wherein she alleged Plaintiff performed dental malpractice or substandard treatment upon her, causing her pain and injury. In enacting the CPGA, the Legislature declared that it recognized citizens' rights to petition their government as an inalienable right; that it sought to secure that right to petition the government for redress of grievances; and that it affirmed that claims, opinions and information provided by citizens to their governments are essential to public health. 7 GCA § 17102(a)(1) & (2). Such was the case here, where Defendant made a complaint to the Board of Examiners for Dentistry regarding the quality of treatment she received from a dental auxiliary, and where that complaint, its contents and its subject all come under the purview of the Dental Board pursuant to 10 GCA §§ 12417 through 12471, inclusive. Further, the Legislature found civil lawsuits are filed against citizens based on their valid exercise of their right to seek relief, to influence action and to inform a government body. 7 GCA § 17102(a)(3). This equally

applies to the instant case, where Plaintiff filed a defamation action against Defendant solely based upon her complaint to, and testimony before, the Dental Board.

The Legislature acknowledged that "while some citizen communications to government inevitably will be incorrect, unsound, self-interested or not in good faith, it is essential … [for] citizens to participate fully in the process of government". 7 GCA § 17102(a)(9). To these ends, the Legislature held the purposes of the CPGA include "the protection and regulation of public health, safety and welfare by protecting public participation in government programs, public policy decisions and other actions". 7 GCA § 17102(b)(3). The Government of Guam has an expressed, legitimate interest in protecting public health and, to that extent, the Government licenses and regulates dentists and dental auxiliaries. Necessary to this process is the protection of the ability of citizens who receive dental treatment from licensed professionals to inform the Dental Board, as a regulatory body, of allegations that a dental care provider has performed malpractice or provided substandard care.

The Court previously found Defendant's acts to be proper petitioning activity, and Plaintiff's lawsuit filed in retaliation falls squarely under the definition of a SLAPP lawsuit. *See* 7 GCA § 17102(a)(3), (6) & (7). Given the aforementioned legislative intent of the CPGA and the facts before the Court, the Court finds it necessary in the context of the present case to sanction Plaintiff to deter repetition of his conduct and comparable conduct by other health professionals. Thus the Court hereby imposes a sanction upon Plaintiff pursuant to 7 GCA § 17106(g)(2) in the amount of Twenty Thousand Dollars ($20,000.00). The Court finds this amount to be appropriate and necessary to prevent probable recidivism and deter others similarly situated.

**5. Compensatory Damages**

Under Guam law, a person damaged or injured by reason of a claim filed in violation of their immunity under the CPGA may seek relief in the form of a claim for compensatory damages from the person or persons responsible. 7 GCA §17106(h). Defendant seeks an award of compensatory damages for the damages Defendant has suffered as a result of this lawsuit.

In order to conduct a meaningful review, the parties must articulate their arguments in a way that allows a court to apply the recognized rules of law. *Lamb v. Hoffman*, 2008 Guam 2 ¶ 35. "It is not sufficient for a party 'simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.'" *Id.* (citation omitted).

In support of her claim for compensatory damages, Defendant states as follows: "Defendant Elsie Smith has been wronged and has suffered as a result of this frivolous lawsuit. This award is committed to the sound discretion of the court." (Defendant's Trial Memorandum, 7, 7/1/2013). However, Defendant fails to articulate the type of damage or the extent of her suffering resulting from the Plaintiff's actions. Furthermore, she fails to show that Plaintiffs' conduct was the proximate cause of the harm that she suffered, whatever it may be. In the absence of such evidence, the Court cannot award compensatory damages.

## 6. Unclean Hands

The doctrine of unclean hands is an affirmative defense by the non-prevailing party to prevent a prevailing party from obtaining relief. *See Guam Top Builders, Inc. v. Tanota Partners*, 2012 Guam 12 ¶ 26 (citation omitted). It is invoked when "one seeking relief in equity has violated conscience, good faith or other equitable principles in his prior conduct." *Id.* (*citing Fibreboard Paper Prods. Corp. v. E. Bay Union of Machinists, Local 1304*, 39 Cal.Rptr. 64, 96 (Ct.App.1964)). Plaintiff claims that Defendant acted with "unclean hands" when she wrongly identified Plaintiff as the person who allegedly injured her and failed to take affirmative action for over a year and a half to clear Plaintiff's good name. (Trial Mem., 2-8, Jun. 24, 2013). However, Defendant testified that she believes that Plaintiff was the one who assisted with the root canal that caused her harm, despite Mr. Julao's insistence that he was the dental auxiliary that assisted Dr. Sule in Defendant's dental procedure. (Testimony of Elsie Smith, Record Log at 3:59, Jun. 24, 2013). Because the Court received no evidence to indicate Defendant possesses anything other than a genuine belief that Plaintiff was the dental auxiliary that assisted with the dental procedure at issue, the doctrine of unclean hands does not apply.

///

///

///

## CONCLUSION

Based upon the foregoing, Defendant is entitled to an attorney's fees and costs award of Twenty-Two Thousand Ninety-One Dollars and Eighty-Two Cents ($22,091.82) pursuant to 7 GCA § 17106(g)(1). Further, the Court imposes a sanction upon Plaintiff pursuant to 7 GCA § 17106(g)(2) in the amount of Twenty Thousand Dollars ($20,000.00). Both these amounts totaling Forty-Two Thousand Ninety-One Dollars and Eighty-Two Cents ($42,091.82) shall be immediately due and owing to Defendant by the Plaintiff.

SO ORDERED this _31ST_ day of October, 2013.

**HON. JAMES L. CANTO II**
**Judge, Superior Court of Guam**

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

OCT 3 1 2013

Roman F. P. Quinata
Deputy Clerk, Superior Court of Guam

